IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| Kathy P. | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | Case No. 18 CV 50295 |
| v. | ) | |
| | ) | Magistrate Judge Lisa A. Jensen |
| Andrew Marshall Saul, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| *Defendant*. | ) | |

### MEMORANDUM OPINION AND ORDER[1]

Plaintiff Kathy P. brings this action under 42 U.S.C. § 405(g) challenging the denial of disability benefits. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Because the Court finds that the ALJ improperly analyzed the opinion of Plaintiff's treating psychiatrist, Plaintiff's motion for summary judgment is granted, the Commissioner's motion for summary judgment is denied, and the decision of the ALJ is reversed and remanded.

### BACKGROUND

While Plaintiff has a variety of physical and mental impairments, her appeal focuses on just two: her mental impairments and chronic migraines. Thus, the Court will limit the background discussion accordingly.

Plaintiff filed an application for disability insurance benefits on July 6, 2015. She alleged her disability began on the same day. R. 125. The record reveals that at least by November 2014,

---

[1] The Court will assume the reader is familiar with the basic Social Security abbreviations and jargon.

Plaintiff had been diagnosed with attention deficit hyperactivity disorder ("ADHD"), generalized anxiety disorder, and post-traumatic stress disorder ("PTSD"). R. 641.

The record contains treatment notes from Plaintiff's treating psychiatrist, Dr. Rachel Long, that began on January 9, 2015. R. 696. Plaintiff reported that she had been diagnosed with ADHD since fourth grade. She had been diagnosed with PTSD a few years prior. Plaintiff takes Adderall for her ADHD and described difficulty moving from one task to the next at home. Regarding her PTSD, Plaintiff reported "intrusive memories" of past emotional, physical, and sexual abuse. She reported difficulty sleeping. She is very sensitive to criticism and imagines herself as a child with her aunt who was verbally abusive. She described a situation at work where her boss criticized her in front of others. Plaintiff reported anxiety any time she does something in front of other people. She feels spied on and has panic attacks. On physical examination, she had impaired concentration and difficulty with attention. Her mood was anxious. Dr. Long formulated a treatment plan to 1) increase her focus and concentration, 2) decrease her intrusive thoughts, 3) decrease her sensitivity and 4)) help with her sleeping difficulties. Dr. Long recommended psychotherapy and medication management. *See* R. 696–701. The record contains treatment notes for six visits with Dr. Long during 2015. *See* R. 696, 706, 733, 787, 812, 926.

Regarding her migraine headaches, Plaintiff went to the emergency department for her headaches over the right side of her forehead in December 2014. R. 881. She complained of chronic daily headaches to Dr. Kara Tower in May and June 2015. R. 770, 805. Plaintiff complained that her migraines occurred three or four times per week, lasting all day, and exceeding fifteen days per month over a four-hour duration. *See* R. 830, 918. She received Botox injections to help alleviate the pain in September and December 2015, and March, September,

2

and December 2016. *See* R. 919, 980, 1046, 1091, 1149. She also received an occipital nerve block and another Botox injection in March 2017. R. 1269, 1300.

     The record includes three opinions by Dr. Long. In her September 25, 2015 psychiatric report, Dr. Long noted that she has seen Plaintiff twice monthly since August 3, 2012. Dr. Long reported that Plaintiff had difficulty staying on task and completing tasks. She is irritable, hypervigilant, emotionally reactive, and has intrusive memories. Her symptoms affect her work because she can have disruptive anger spells, have difficulty accepting criticism, get distracted, and have trouble completing work tasks. R. 907. She has trouble responding to criticism and had serious limitations with the ability to independently initiate, sustain, or complete tasks. R. 909. Dr. Long also filled out a mental impairment questionnaire on January 13, 2016. Dr. Long opined that Plaintiff had marked limitations in maintaining concentration, persistence, or pace. R. 1065. Dr. Long also reported that Plaintiff will never have to be absent from work, but Plaintiff would quit the job when her anxiety reaches a certain point. R. 1067. In her June 2, 2017 mental medical source statement, Dr. Long stated that Plaintiff was anxious, tense, tangential, hyperactive, emotionally labile, and highly reactive. Plaintiff also had rapid speech and spells of intense irritability. R. 1070. Dr. Long opined that Plaintiff was unable to meet competitive standards for several abilities such as completing a normal workday and workweek without interruptions, accepting instructions and responding appropriately to criticism from supervisors, and dealing with normal work stress. R. 1072. Dr. Long noted that it is difficult for Plaintiff to sustain routine activities because she gets bored and frustrated easily and does not respond well to stress. R. 1073. This time Dr. Long reported that Plaintiff will be absent from work more than four days per month.

The Administrative Law Judge ("ALJ") held a hearing on July 6, 2017, and Plaintiff testified at the hearing. She discussed her past work and her activities. She worked at a Casey's General Store as a cashier but stopped working there due to anxiety and her back. R. 148. Afterwards, Plaintiff was an assistant manager at Family Dollar and then worked at Walmart. R. 149. A pain specialist recommended that Plaintiff try to stay active. Plaintiff testified that she goes on walks with her husband and kids. R. 157. She can walk three miles at one time. R. 162. During a typical day, she tries to do cooking, the dishes, and laundry. Her husband helps her by washing her hair and her body. *Id.* Plaintiff also sold Tupperware online, but she spent only one hour on the computer the day before the hearing and did not touch the computer for two weeks before that. She also babysits about two days per week. R. 164. Plaintiff socializes with a couple friends by having them come over to the house to play board games. They also saw fireworks together one day. R. 166.

Regarding her ADHD and anxiety, Plaintiff explained that she panics or "freaks out" sometimes and gets impulsive or lashes out. R. 159. She continues to see Dr. Long approximately every three months and gets counseling once a month. R. 154.

To help with her migraines, Plaintiff had Botox injections about every three months. *Id.* Plaintiff testified that she gets headaches about fifteen times in a three-month period. R. 158. She described the headaches as "[v]ery painful." R. 168. To help alleviate the pain, she lies down in a dark room and minimizes any noises or smells. *Id.*

Ellen Rozenfeld, a psychologist and medical expert, also testified at the hearing and opined that given Plaintiff's anxiety, she should be limited to simple, routine tasks. Plaintiff may have incidental public contact but cannot perform tasks requiring ongoing, sustaining

interactions or communication. She can handle routine supervision and routine changes. She can perform simple decision-making and would do best in a predictable work setting. R. 175.

The ALJ gave the following hypothetical limitations to the vocational expert. Plaintiff could sit six to eight hours per day, stand and walk for at least six hours per day, and lift/carry frequently up to ten pounds and occasionally up to twenty pounds. She is limited to jobs that are simple and routine, with 1-3 step instructions, and routine changes only. She should work primarily alone having only incidental contact with the general public. The vocational expert testified that such an individual could perform spot welder as she performed it, wire cutter as she performed it, and button spindler as defined and as she performed it. R. 180.

After the hearing, the ALJ issued her written opinion denying disability benefits on December 12, 2017. She found that Plaintiff had the following severe impairments: migraine headaches, lumbar/thoracic arthralgias, ADHD, PTSD, and generalized anxiety disorder. R. 127. Plaintiff's impairments did not meet or equal a listing. The ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform light work with the following limitations: only jobs that are simple and routine with 1-3 step instructions and routine changes, only jobs where Plaintiff works primarily alone with incidental contact with the general public, and where Plaintiff has only occasional contact with co-workers and does not interact on joint tasks. R. 131. In reaching her decision, the ALJ gave only partial weight to Dr. Long's opinions while giving great weight to the opinion of psychologist Ellen Rozenfeld. R. 134. Plaintiff now appeals the decision.

## STANDARD OF REVIEW

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C.

§ 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Accordingly, the reviewing court is not to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).

However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (a "mere scintilla" is not substantial evidence). A reviewing court must conduct a critical review of the evidence before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Moreover, federal courts cannot build a logical bridge on behalf of the ALJ. *See Mason v. Colvin*, No. 13 C 2993, 2014 WL 5475480, at *5–7 (N.D. Ill. Oct. 29, 2014).

## ANALYSIS

Plaintiff raises three main arguments: 1) the ALJ did not give appropriate weight to the opinion of her treating psychiatrist, Dr. Long; 2) the ALJ did not appropriately assess her severe migraines; and 3) the ALJ did not properly assess her subjective allegations.

**Weight Given to Dr. Long's Opinions**

Plaintiff argues that the ALJ failed to give appropriate weight to the opinions of her treating psychiatrist, Dr. Long. A treating physician's opinions on the nature and severity of a medical condition are entitled to controlling weight unless they are unsupported by medical

findings or inconsistent with the record. *See* 20 C.F.R. § 404.1527(c); *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018) ("This is the rule governing claims filed before March 27, 2017, *see* 20 C.F.R. §§ 404.1520c(a)(2017)."); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). A treating physician has greater familiarity with Plaintiff's conditions and circumstances, and therefore an ALJ may only discount a treating physician's opinion based on "good reasons" supported by substantial evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).

Here, the ALJ did not give controlling weight to Dr. Long's opinions. Rather, she assigned it only partial weight. In so doing the ALJ provided only two rationales. First, she stated that Dr Long's assessments were not wholly consistent with her treatment notes. To support this statement, the ALJ noted that Dr. Long's assessments are based upon what "appears to have been marital therapy." R. 134. However, this conclusion lacks a solid foundation in the record. While Plaintiff did see various therapists for psychotherapy, she also saw Dr. Long for medical and medication management. Dr. Long met with Plaintiff at least six times in 2015, and at each visit, Dr. Long performed her own assessment of Plaintiff, which revealed abnormal findings. She diagnosed Plaintiff with PTSD, ADHD, anxiety and sleep disruption. R. 696, 706, 733, 787, 812, 926. She developed a treatment plan for these conditions, which significantly did not include marital therapy, R. 700–01, prescribed medications and ordered genetic testing, R. 709, 736. During the visits with Dr. Long, Plaintiff complained of chronic worrying, difficulty doing things in front of others, difficulty moving from one task to the next, and memory problems. R. 696–97, 734, 787, 926. She discussed work difficulties, marital difficulties, sleep difficulties and flashbacks. R. 696–97, 706, 733–34, 787–88, 812–13, 926–27. In light of the above listed

interactions with Dr. Long, it is unclear how the ALJ determined that Dr. Long's opinions were based upon therapy notes dealing with marital issues and not on Dr. Long's own repeated interactions with and assessments of Plaintiff. Without more explanation, the ALJ's statement that Dr. Long's opinions were based on marital therapy notes does not appear to be supported by substantial evidence in this record.

The second reason offered by the ALJ for affording only partial weight to Dr Long's opinions is that the limitation presented in Dr. Long's reports are overall more extreme than supported by Plaintiff's work history, relationship history, and reported activities of daily living. R. 134. The ALJ lists only two examples: babysitting and "regular social activity." *Id.* First, the ALJ states that Plaintiff takes care of two children on a regular basis.[2] However, the record supports that Plaintiff babysits two children "[s]ometimes a couple days a week" if her friends need her. R. 164. When she babysits, it varies from four to seven hours. R. 165. Plaintiff testified that she mainly sits down with the children and watches TV and then feeds them. *Id.* She might go to the park with them but only if her husband wakes up and goes with her. *Id.* The ALJ does not refer to this latter evidence nor does she explain how this limited babysitting is inconsistent with the limitations that Dr. Long outlined. The ALJ must provide clear reasoning or in the words of the Seventh Circuit, must build a logical bridge between the facts and her conclusions. *See Berger*, 516 F.3d at 544. Without further explanation, it is unclear how the ALJ determined that Plaintiff's babysitting was inconsistent with Dr. Long's restrictions.

---

[2] It appears that the ALJ either was confused about the nature of the babysitting or simply misconstrued it. At one point, the ALJ states, "[t]he claimant reports taking care of two young children *on a daily basis* for 4-7 hours per day, which requires significant physical and mental functioning." R. 134 (emphasis added). At another point, she states that "the claimant reports that she babysits two children, ages 7 and 3, a couple of days per week, for 4-7 hours each day." R. 133.

The second example the ALJ gave to support her conclusion that Dr. Long's limitations are more extreme than supported by Plaintiff's work history, relationship history, and activities of daily living is that she had "regular social activity." R. 134. However, the ALJ gave no examples of what social activity Plaintiff engaged in that was inconsistent with Dr. Long's opinions. The Commissioner points to examples given elsewhere in the body of the ALJ's opinion such as selling Tupperware on the computer, playing board games with friends, preparing simple meals, washing laundry, doing the dishes and dusting. However, the ALJ again does not identify why these activities undercut Dr. Long's opinions or which opinions they undercut. Without further explanation this Court cannot determine how activities such as playing board games, selling Tupperware on the computer, and preparing simple meals undercut the limitations to employment that Dr. Long outlines. Plaintiff's ability to perform some daily activities does not mean that she can perform the requirements of the modern workplace. *See Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011).

The Commissioner argues that Dr. Long's opinion that Plaintiff would experience significant stress by working within a schedule or for a full day is inconsistent with a progress note referencing the fact that Plaintiff gained more responsibility and hours while working at Casey's General Store in 2015. While the ALJ did refer to a reference in the record indicating that Plaintiff gained more responsibility and hours in 2015, the ALJ failed to discuss how Plaintiff reacted to this increased responsibility. According to the same progress note, Plaintiff felt anxiety over things not perfectly done. She wanted to be very thorough, and it frustrated her that her co-workers did not do as well of a job. She had anxiety over things not in her control. R. 950. In fact, Plaintiff quit her position at Casey's General Store partly because of her anxiety. At the hearing, she recounted how she told her manager that one of the cash registers was not

9

working, and the manager snapped at her. Plaintiff said the experience was "nerve-wracking" and she just could not handle it, so she quit. R. 149. These additional facts appear to support Dr. Long's opinion. Yet, the ALJ did not address these facts and instead improperly cherry picked those facts that support her conclusion while ignoring those that do not. *See, e.g.*, *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *Kimberly L. W. v. Berryhill*, No. 17 C 50281, 2019 WL 354980, at *5 (N.D. Ill. Jan. 29, 2019).

The Commissioner offers an additional basis to support the ALJ's decision not to give Dr. Long's opinions controlling weight. The Commissioner argues that the ALJ properly recognized that Dr. Long's opinions were outliers compared to three other opinions finding Plaintiff more capable. But the ALJ never compared Dr. Long's opinions to Dr. Rozenfeld's opinion or to the state agency consultants' opinions. While the ALJ discussed the other opinion evidence later in her opinion, the ALJ never characterized Dr. Long's opinions as outliers compared to the other opinions and never cited this as a reason for giving partial weight to Dr. Long's opinions. The Court cannot look to reasons that the ALJ did not supply. *See Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009).

Even if there was sound reason not to give Dr. Long's opinions controlling weight, the ALJ still erred in assigning only partial weight to Dr. Long's opinions without considering certain relevant checklist factors.[3] If the ALJ decides not to give controlling weight to a treating physician's opinion, she must evaluate certain checklist factors in order to determine exactly how much weight to give to the opinion. *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009). Those factors include the following: the length of the treatment relationship and frequency of

---

[3] This two-step process is commonly referred to as the treating physician rule.

10

examination, the nature and extent of the treatment relationship, supportability, consistency, specialization, and other factors. 20 C.F.R. § 404.1527(c).

The ALJ did not discuss several of these factors. The Commissioner argues that the ALJ was not required to address each checklist factor so long as the ALJ provided sufficient reasons, citing *Gwendolyn M. v. Berryhill*, No. 17 CV 7900, 2019 WL 2208306, at *9 (N.D. Ill. May 22, 2019). First, this is a misstatement of the court's holding in *Gwendolyn M.* The court in *Gwendolyn M.* held that the ALJ need not explicitly discuss each factor so long as the decision makes clear that the ALJ implicitly considered the checklist factors. *Gwendolyn M.*, 2019 WL 2208306, at *9. Moreover, the Commissioner fails to recognize that there are two distinct lines of cases in the Seventh Circuit: one that requires an explicit analysis of each checklist factor and one that allows an implicit analysis. *See Duran v. Colvin*, No. 13CV50316, 2015 WL 4640877, at *8–10 (N.D. Ill. Aug. 4, 2015) (describing the two lines of cases). In this Court's view, the failure to explicitly analyze each checklist factor is itself a ground for a remand. *See Jason H. v. Saul*, No. 18 CV 50062, 2019 WL 3857879, at *5 (N.D. Ill. Aug. 16, 2019); *Michelle S. v. Berryhill*, No. 17 CV 50397, 2019 WL 2225994, at *5 (N.D. Ill. May 23, 2019). However, even if this Court takes the more forgiving approach, the ALJ failed to implicitly consider all the checklist factors.

As for the first two factors—the length and frequency of treatment and the nature and extent of the treatment relationship—Plaintiff argues that the ALJ never discussed these factors. This Court agrees. The ALJ never set forth the basic facts about the relationship. True, the ALJ recognized Dr. Long as a treating source, but that is not enough. The ALJ never considered the length or frequency of the treatment relationship. According to Dr. Long's psychiatric report, she has seen Plaintiff twice monthly since August 3, 2012. R. 907. Plaintiff saw Dr. Long for at least

six sessions in 2015. *See* R. 696, 706, 733, 787, 812, 926. Each session lasted from thirty minutes to fifty-five minutes. According to Dr. Long's June 2, 2017 Mental Medical Source Statement she had been providing Plaintiff medical management every two months for thirty minutes each. R. 1070. The record seems to support a very lengthy and substantial treatment relationship. Yet, the ALJ did not address how, if at all she factored the length and nature of this treating physician relationship into her determination to give only partial weight to Dr. Long's opinion. *See* 20 C.F.R. § 404.1527(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."). These factors weigh in favor of giving greater weight to Dr. Long's opinions and the ALJ's failure to address them, either explicitly or implicitly, was error.

The ALJ also failed to consider the specialization of Dr. Long. *See* 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist."). Dr. Long's opinions regarding how Plaintiffs mental impairments would limit her ability to work fall squarely within her specialty. The ALJ did not discuss Dr. Long's specialty in the context of deciding the weight to give her opinions. The omission is especially problematic here in light of the fact that the ALJ gave the opinion of psychologist Dr. Rozenfeld great weight while only giving Dr. Long's opinions partial weight. R. 134–35. The decision to credit a psychologist's opinion over that of a psychiatrist without discussing the specialization factor is error requiring remand. *See Scott*, 647 F.3d at 740; *Jones v. Berryhill*, No. 17 C 5494, 2018 WL 4905020, at *7 (N.D. Ill. Oct. 9, 2018).

In sum, the ALJ improperly analyzed the opinions of Plaintiff's treating psychiatrist, Dr. Long. The ALJ's decision is remanded, so that the ALJ can address each step of the treating

physician rule. If the ALJ properly determines that Dr. Long's opinions do not deserve controlling weight at Step One, then the ALJ must consider the checklist factors under 20 C.F.R. § 404.1527(c) at Step Two to determine what weight to give to the opinions. The Court is aware that Plaintiff raises additional basis for error: namely the ALJ's symptoms evaluation and RFC assessment. However, because the Court is remanding the ALJ's decision for violating the treating physician rule, the Court need not address these arguments.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted, the Commissioner's motion for summary judgment is denied, and the decision of the ALJ is reversed and remanded for further proceedings consistent with this opinion.

Date: May 21, 2020        By: _____
Lisa A. Jensen
United States Magistrate Judge